**CAPITAL RENTAL EQUIPMENT COMPANY**

v.

**PACIFIC INDEMNITY COMPANY.**

**Civ. A. No. 1142.**

United States District Court
W. D. Texas,
Austin Division.
March 30, 1961.

**898**

Coleman Gay, Austin, Tex. (Gay & Meyers, Austin, Tex., of counsel), for plaintiff.

Josh H. Groce, San Antonio, Tex., (Groce & Hebdon, San Antonio, Tex., of counsel), for defendant.

BEN H. RICE, Jr., Chief Judge.

This case is now before the court on defendant's motion for summary judgment. For the sake of brevity plaintiff, Capital Rental Equipment Company, will be hereinafter referred to as Capital; Trinity Universal Insurance Company will be referred to as Trinity Universal; Southern Pacific Transport Company will be referred to as Southern Pacific; Pacific Indemnity Company will be referred to as Pacific Indemnity; and Jack Lindgren, or his estate or beneficiaries, will be referred to as Lindgren. The undisputed facts as disclosed by the affidavits, depositions and pleadings are as follows:

On June 24, 1957, Lindgren, an employee of an airconditioning contractor, was crushed to death in the City of Austin, Texas, when the boom of a crane belonging to Capital collapsed because it was overloaded. Trinity Universal insured this crane with limits of $500,000/1,000,000 and the accident was reported the same day to Trinity Universal, which made a full investigation, which investigation was reported to the home office on July 8, 1957.

A Southern Pacific truck had brought a new airconditioning unit to the jobsite but at the time of the accident an old airconditioning unit was being removed from the basement of the building, and the Southern Pacific truck had not become involved in the operation at the time of the accident. Pacific Indemnity had a policy covering the Southern Pacific truck which contained the usual loading or unloading clause that would protect anyone "using" the truck for the purpose of "loading or unloading". This identical clause appeared in Trinity Universal's policy as well as Pacific Indemnity's.

On August 8, 1958, suit was brought against Capital in the state court for the death of Lindgren, and Trinity Universal handled the defense of that case. The trial in that case was set for November 16, 1959, and it was not until November 4, 1959, that Pacific Indemnity received any notice of the accident which had occurred on June 24, 1957, more than two years before.

The plaintiff in open court conceded that under the case of Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95, notice of the accident to Pacific Indemnity was not timely unless the delay could be

excused and the plaintiff assume the burden of persuasion on this point by filing its brief first. In its brief plaintiff urges first that Capital and Trinity Universal gave notice as soon as they learned of the existence of Pacific Indemnity's policy, and second, that after the state court suit of Lindgren vs. Capital had been completely settled for some $66,725, Pacific Indemnity wrote plaintiff that it denied "coverage" which constituted a waiver of delayed notice.

With reference to the claim that Capital and Trinity Universal did not know of the existence of Pacific Indemnity's policy, the facts are as follows:

The president of Capital testified that he reported the accident the same day it happened to Trinity Universal, and that he left the handling of this case entirely up to Trinity Universal and did everything that they requested him to do. The district claim manager for Trinity Universal admitted that as early as July 8, 1957, he knew that a truck of Southern Pacific was on the premises for the purpose of loading or unloading, and he testified that between that time and October 29, 1959, he did not discover any new facts whatsoever relative to the ostensible use of the Southern Pacific truck for the purpose of loading or unloading, but he states that on October 29, 1959, "I just woke up at that time", and thereafter he gave notice of the accident to Pacific Indemnity.

■ The name "Southern Pacific Transport Company" is indicative that this company is a common carrier and as such is required under the provisions of Article 911d, Vernon's Ann.Tex.Civ.St. to carry liability insurance, with its policy on file with the Railroad Commission, and the district claim manager of Trinity Universal admitted that he had no difficulty in checking this coverage when he ultimately "woke up" by going to the Railroad Commission which was only four blocks from his office there in Austin.

■ Under the above undisputed facts, the court is of the opinion that there was a duty on the part of Capital, and therefore on Trinity Universal, to exercise due diligence to ascertain whether or not the Southern Pacific truck was covered by liability insurance and that, as a matter of law, Capital and Trinity Universal failed to exercise such diligence.

Trinity Universal, under its policy covering Capital, had the right to and did control the entire handling of this matter for Capital, and as the president of Capital testified, he in effect constituted Trinity Universal his agent for the handling of this matter.

Trinity Universal's policy contained the identical loading and unloading clause and an identical notice clause with those clauses contained in Pacific Indemnity's policy. If Trinity Universal or Capital was to contend that Capital was an additional insured under Pacific Indemnity's policy, and that the Southern Pacific truck was being "used" at the time of this accident for the purpose of "loading" or "unloading", they were required to give notice to Pacific Indemnity "as soon as practicable". This was not done and, as a matter of fact, there was a delay of more than two years and four months in giving any notice of this accident whatsoever. The court is of the opinion that this was a clear breach of the notice provision of the policy. Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95; National Surety Corporation v. Diggs, Tex.Civ.App., 272 S.W.2d 604; Yorkshire Indem. Co. of New York v. Roosth & Genecov Producing Co., 5 Cir., 252 F.2d 650; Unverzagt v. Prestera, 339 Pa. 141, 13 A.2d 46; Clements v. Preferred Acc. Ins. Co., 8 Cir., 41 F.2d 470, 76 A.L.R. 17; Navigazione Alta Italia v. Columbia Casualty, 5 Cir., 256 F.2d 26; Dunn v. Travelers Indem. Co., 5 Cir., 123 F.2d 710.

The court is not unmindful of the decision in National Surety Corporation v. Wells, 5 Cir., 287 F.2d 102, but the facts in that case are easily distinguishable from the undisputed facts of this case.

With reference to the plaintiff's contention that there was a waiver by Pacific

Indemnity, the facts are that it was not until November 4, 1959, that Pacific Indemnity received notice from Trinity Universal of the accident and the state court Lindgren suit was set for trial just 12 days later. By the time the case was reached for trial, a settlement had been agreed upon between all parties to that suit, and on December 10, 1959, an agreed judgment was entered in the Lindgren state court suit.

Thereafter, on January 4, 1960, Pacific Indemnity wrote both Trinity Universal and Capital a letter which merely stated:

"It is our opinion that neither Capital Rental Equipment Company nor Trinity Universal Insurance Company is entitled to coverage under any policy or policies issued to Southern Pacific Transport Company and therefore we respectfully deny your claim".

No reason for the denial of coverage was given.

Waiver has been defined as "The intentional relinquishment of a known right". 92 C.J.S. p. 1041, and, as stated in 92 C.J.S. p. 1061, "A waiver must be made distinctly".

It is obvious that the letter of Pacific Indemnity did not "distinctly" waive anything; it merely denied coverage without assigning any reason therefor, as it could legally do. Callen v. Massachusetts Protective Ass'n, 8 Cir., 24 F. 2d 694.

Furthermore, the authorities seem to hold that before the doctrine of waiver can apply, the claimant must be "misled to his injury". 45 C.J.S. Insurance § 707, p. 678; Klein v. Century Lloyds, Tex.Civ.App., 275 S.W.2d 91, at page 94. However, a conclusive answer to the contention of waiver is found in the case of Galveston County v. Hartford Fire Ins. Co., Tex.Civ.App., 231 S.W.2d 684, 685, writ refused. There it was held that a denial of liability coming "after the time provided by the policy for the giving of notice" did not constitute a waiver. The same factual situation exists here.

The defendant's motion for summary judgment in this case is sustained, and counsel is directed to prepare judgment accordingly.