**STATE FARM FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**Melissa WIGGINS, et al., Defendants.**

**Civil Action No. 96–A–082–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 23, 1997.

---

Michael S. Jackson, Montgomery, AL, for Plaintiff.

W. Cameron Parsons, Tuscaloosa, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

## I. INTRODUCTION

This cause is before the court on the Motion for Summary Judgment filed by plaintiff State Farm Fire & Casualty Company ("State Farm") on March 19, 1997.

State Farm filed this declaratory judgment action on January 16, 1996 in this court naming Melissa Wiggins ("Wiggins") and Chris Sanders ("Sanders"). In its Complaint for Declaratory Judgment, State Farm seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that State Farm has no obligation to Wiggins or Sanders to satisfy the default judgment entered against Sanders. Alternatively, State Farm seeks a declaration under the Declaratory Judgment Act that State Farm's obligation to satisfy the default judgment is limited to the difference between the amount of the default judgment and the amount of Wiggins's pro tanto settlement with Alpha Tau Omega fraternity ("ATO").

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, based upon the parties' diversity of citizenship and an amount in controversy exceeding $50,000.00, exclusive of interest and costs.

For the reasons that follow, the court finds that the Motion is due to be GRANTED.

## II. FACTS

Submissions before the court establish the following facts:

State Farm is an Illinois corporation with its principal place of business in Illinois. Both defendants are Alabama residents.

On or about November 15, 1991, Sanders allegedly hit Wiggins during a party at the ATO house, causing Wiggins to lose her two front teeth (this fact will be referred to as "the Incident"). At the time, Sanders had insurance through his parents' homeowners insurance policy ("the Policy"), No. 01–98–3919–8, issued by State Farm. On November 9, 1993, Wiggins filed suit in the Circuit Court of Tuscaloosa County, Alabama against ATO and Sanders.

State Farm first received notice of the Incident and Wiggins's lawsuit from a letter dated November 30, 1994 and written by Wiggins's attorney, David M. Anderson ("Anderson"). On December 8, 1994, State Farm sent a letter to Sanders's parents informing them of Anderson's letter and that State Farm planned no further action because it did not receive timely notice of the

Incident. On December 13, 1994, one of Sanders's parents responded to the letter, writing that "I *do not* wish for State Farm to become involved in this matter. Thank you for your concern." On December 15, 1994, State Farm sent a letter to Sanders's parents confirming that they did not want State Farm to be involved in the suit, and that State Farm was closing its file on the matter. Moreover, on January 11, 1995 State Farm mailed a letter to Sanders seeking confirmation that Sanders did not want State Farm to be involved in the suit. On January 18, 1995, Sanders responded to the letter seeking confirmation, writing that "I *do not* wish for State Farm to become involved in this matter."

Prior to trial, Wiggins entered into a pro tanto settlement with ATO. On June 28, 1995, Wiggins obtained a $100,000.00 default judgment against Sanders due to his failure to appear at trial. On July 14, 1995, Wiggins and Sanders requested that State Farm pay the default judgment. When State Farm refused to pay, Wiggins filed a motion to attach the insurance policy and to add State Farm to the action. Wiggins's motion was later dismissed and affirmed on appeal by the Alabama Supreme Court. *See Wiggins v. State Farm Fire and Cas. Co.,* 686 So.2d 218 (Ala.1996). The Alabama Supreme Court held that if Wiggins is to sue State Farm for satisfaction of the outstanding default judgment, she needs to do so in a separate action. *Id.* at 219–20. State Farm subsequently filed this declaratory judgment action.

## III. SUMMARY JUDGMENT STANDARD

The purpose of a motion for summary judgment is to challenge the contention that a case presents a genuine issue of material fact necessitating a trial. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The moving party can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. On the other hand, the evidence of the nonmoving party must be believed, and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## IV. DISCUSSION

### A. Jurisdiction

█ In her Memorandum of Law in Opposition to Plaintiffs Motion for Summary Judgment, Wiggins seems to assert that the court should reconsider its September 13, 1996 decision denying her Motion to Dismiss and decline jurisdiction over this declaratory judgment action because this action raises a novel issue of state law. "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the

suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 281–82, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995) (citing *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)). In declaratory judgment actions, "[T]he normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288, 115 S.Ct. at 2143.

Here, there is no pending state court proceeding on the same issues involved in this action. *Cf. id.* at 289–90, 115 S.Ct. at 2144 (holding that the district court had discretion to stay declaratory judgment action "where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court."). Wiggins contends that this action presents an issue of first impression in Alabama concerning the extent of the rights and obligations of a third-party beneficiary under a tortfeasor's insurance policy. The court disagrees. The issue presented in this action is whether there is a breach of an insurance policy due to failure to provide timely notice to the insurer such that the insurer owes no duty to indemnify its insured from a default judgment entered against the insured. This is an issue that Alabama courts have addressed in several cases. Therefore, the court will use its discretion to exercise jurisdiction over this action.

### B. *Breach of the Policy*

 State Farm contends it is entitled to summary judgment because Sanders, the insured, breached his duty under the Policy to provide timely written notice to State Farm of the Incident. Citing several of its prior decisions, the Alabama Supreme Court has held that "[T]he failure of an insured to comply within a reasonable time with such conditions precedent in an insurance policy requiring the insured to give notice of an accident or occurrence releases the insurer from obligations imposed by the insurance contract." *Reeves v. State Farm Fire and Cas. Co.,* 539 So.2d 252, 254 (Ala.1989) (citations omitted). The Alabama Supreme Court

has interpreted the terms "as soon as practicable" and "immediately," both of which are included in the Policy's notice provision, "to mean that 'notice must be given within a reasonable time in view of the facts and circumstances of the case.'" *Haston v. Transam. Ins. Servs.,* 662 So.2d 1138, 1141 (Ala.1995) (quoting *Pharr v. Continental Cas. Co.,* 429 So.2d 1018, 1019 (Ala.1983)). There are only two factors for a court to consider in determining the reasonableness of a delay in giving notice: the length of and reasons for the delay. *Id.* (citing *Southern Guar. Ins. Co. v. Thomas,* 334 So.2d 879, 883 (Ala.1976)). An insurer need not show any prejudice by the delay to release its obligations under an insurance policy. *Correll v. Fireman's Fund Ins. Cos.,* 529 So.2d 1006, 1008–09 (Ala.1988) (citations omitted). Where there is no reasonable excuse for a delay in giving notice, the issue of whether the delay was reasonable may be decided as a matter of law. *Haston,* 662 So.2d at 1141 (citing *Thomas,* 334 So.2d at 882–83).

 Here, the Policy provides, in part, that "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will .... [p]ay up to our limit of liability for the damages for which the insured is legally liable...." (Policy § II—Liability Coverages, Coverage L—Personal Liability.) However, the Policy conditions this provision by providing, in part, that in the case of an accident or occurrence, the insured must

a. give written notice to us or our agent as soon as practicable, which sets forth:

 (1) the identity of this policy and insured;

 (2) reasonably available information on the time, place and circumstances of the accident of occurrence; and

 (3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence[.]

(*Id.* § II—Conditions.) The Policy further provides that "[N]o action shall be brought against us unless there has been full compliance with the policy provisions." (*Id.*)

State Farm first received written notice of the Incident from Anderson's letter dated November 30, 1994.[1] This notice was given more than three years after the Incident occurred (on or about November 15, 1991) and more than one year after Wiggins filed suit against Sanders (November 9, 1993). Wiggins contends that State Farm only needed to be given written notice after an injured party obtains a judgment against the insured; the notice in question is notice of the judgment, not notice of the accident or suit. Such a contention ignores the plain language of the Policy's notice provision, which requires written notice to be given "as soon as practicable" to State Farm of the accident or occurrence. Wiggins's contention also ignores the fact that the Policy's notice provision requires that notice be given "immediately" to State Farm of any "process relating to the accident or occurrence." Furthermore, Wiggins's contention violates the purpose of the notice provision to "immediately" give notice of legal process: "to afford [State Farm] an opportunity to control litigation." *See Reeves,* 539 So.2d at 256 (citation omitted). Thus, written notice to State Farm of the Incident and of Wiggins's suit was delayed by more than three years and one year, respectively.

Sanders has not offered an excuse for the delay. In fact, the correspondences to State Farm by Sanders and his parents show that they did not want State Farm to be involved in the matter relating to the Incident. Although Wiggins contends that she gave written notice to State Farm as soon as she learned that State Farm was Sanders's insurance company, the Policy's notice provision does not require that only the injured party give written notice to State Farm. Instead, the Policy's notice provision expressly requires the insured to give written notice to State Farm, albeit the notice provision also can be satisfied by an injured party. Consequently, Wiggins's lack of knowledge of the

identity of Sanders's insurance company does not, in any way, excuse Sanders's delay in notifying State Farm of the Incident. Therefore, because "Sanders ha[s] offered no excuse for the delay, reasonable or otherwise[,] . . . . [the court] must conclude that the delay was unreasonable as a matter of law." *See Haston,* 662 So.2d at 1141 (citations omitted). *See also id.* (holding that an over two-year delay without any excuse was unreasonable as a matter of law); *Correll,* 529 So.2d at 1009 (affirming trial court's declaratory judgment that a one-year delay with insufficient reasons for the delay was too late to require indemnification); *Pharr,* 429 So.2d at 1019–20 (holding that an eight-month delay without excuse was unreasonable as a matter of law); *Thomas,* 334 So.2d at 885 (holding that a six-month delay without reasonable excuse was unreasonable as a matter of law).

■ Wiggins also asserts that an insured cannot, by omission or commission, defeat an injured party's claim to proceeds under an insurance policy when the policy covers the injury. After observing that an injured party acquires a hypothecated interest in any applicable insurance proceeds, *Haston,* 662 So.2d at 1139 (quotation and citation omitted), the Alabama Supreme Court in *Haston* stated that "Collusion between the insurer and the insured, such as an agreement to withhold notice in order to defeat an injured party's claim, would clearly destroy any related defense available to the insurer against the injured party . . . ." *Id.* at 1140. Wiggins argues that the correspondences between State Farm and Sanders's parents and between State Farm and Sanders constitute collusion. Wiggins speculates that there was some sort of agreement between State Farm and Sanders's parents for Sanders, with no assets to lose, not to file a claim with State Farm in order to prevent an increase in insurance premiums or cancellation of the Policy. However, as the Alabama Supreme Court in *Haston* did not find any evidence from which to infer collusion, here, too, there is no evidence from which the court can infer collusion. *See id.* The correspondences merely indicate an intent by Sanders and his parents to not involve State Farm in matters

---

1. The parties do not dispute that written notice given to State Farm by an injured party can satisfy the notice provision of the Policy. *See*

State Farm's Reply to Defendants' Response to Plaintiffs Motion for Summary Judgment, at 1.

relating to the Incident and State Farm's acquiescence to their intent. No collusive activity may be inferred from this.

Moreover, in *Haston* the Alabama Supreme Court observed that there is an issue as to whether an injured party should be left without a remedy where "the insured, insolvent and arguably indifferent, failed to give the insurer notice of the action." *Id.* The Alabama Supreme Court did not resolve this issue, finding that because the injured parties in *Haston* did not give the insurer notice of a default judgment until more than two years after it was entered, the injured parties did not give notice within a reasonable time to the insurer. *Id.* at 1140–41. Even assuming that an injured party, without any other remedy, can recover against an insurer where "the insured, insolvent and arguably indifferent, failed to give the insurer notice of the action," *id.* at 1140, Wiggins has offered no evidence that Sanders has no assets, that Sanders will declare bankruptcy to avoid satisfying the judgment, and that Wiggins will be unable to collect the default judgment against Sanders. Notably, Wiggins's default judgment against Sanders is active for ten years and can be revived at the end of that time. *See* Ala.Code 1975, §§ 6–9–1 (writs of execution) and 6–9–192 (revival of judgment).

In sum, because neither Sanders nor Wiggins complied with the Policy's notice provision, a condition precedent to indemnification, and there is no evidence of collusion or other circumstances to justify waiving noncompliance with the notice provision, State Farm is released from any obligation to satisfy the default judgment against Sanders. *See* Policy § II—Conditions; *Reeves,* 539 So.2d at 254. Accordingly, State Farm's Motion for Summary Judgment is due to be GRANTED because there is no material issue of fact and State Farm is entitled to judgment as a matter of law.

## V. *CONCLUSION*

For the foregoing reasons, the State Farm's Motion for Summary Judgment is due to be and is hereby GRANTED.